UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas

**ENTERED**

December 13, 2016

David J. Bradley, Clerk

| | | |
|---|---|---|
| Jeffrey C. Bailey, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | Civil Action H-12-1711 |
| | § | |
| Shirley Bailey, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Facts and Conclusions

1.    *Introduction.*

A son purchased a family business from his parents. For the two years preceding the sale, he had not paid the company's payroll taxes. By the most recent calculation, it now owes the Internal Revenue Service $3,034,851.79 plus a trust fund penalty of $2,379,135.49. The sales contract says that the parents are responsible for taxes that accrued before the sale. The son wants the court to declare that the parents must pay them. The parents want the court to declare that the son is responsible – not them. By not disclosing the tax liability, the son induced them to sell the business to him dishonestly. The parents will prevail.

2.    *Background.*

Roger and Shirley Bailey owned Rig-Up Electrical Services, Inc. – an Arkansas corporation. They founded it, and Shirley was its president. Since 2002, son Jeffrey had worked at the plant in Channelview, Texas. In 2006, he was named vice president. By 2007, Roger and Shirley had decided that they no longer wanted to manage the company's operations. They put Jeffrey in charge.

Shirley's remaining function was controlling the cash flow through her authority over a bank account, acting as the treasurer. When she had managed the company, she reviewed the books with Michelle Reed, the bookkeeper. By 2007, Reed kept the books by herself. She would calculate how much money the

company needed each week to pay wages, taxes, and other costs. She would call Shirley with that amount. Reed never gave Shirley a detailed explanation, just a lump sum. Shirley would send the money from an account at the Bank of England in Arkansas to another at Woodforest National Bank in Texas. Reed would disburse the money from the Woodforest account.

In January 2008, Jeffrey decided to buy the company from his parents. He hired Harris Arthur, a certified public accountant, to organize the books to prepare them for selling the company. Arthur reported to Jeffrey, whom he thought was in charge. In April or May of 2008, Arthur realized that payroll taxes had not been paid. Although he did not know the precise amount owed until August or September, he did know that it was substantial.

In late 2007, Jeffrey hired Roy Johnson, the chief financial officer. Though he holds himself out as CFO, he has no experience or training in finance. He did not know what accrual accounting meant. He claimed that he did not know what Reed was doing as bookkeeper because her office was downstairs and his was upstairs. He admitted that he took on the title to make himself look good when soliciting banks for financing that Jeffrey could use to buy the company. Simply put, he misrepresented himself to lenders.

The IRS sent two notices to Shirley and Roger, each for unfiled returns. On receiving one of them, Shirley told Jeffrey about it and told him to take care of it. She does not remember receiving the other one. These notices did not include an amount, only that returns were missing. Jeffrey, not Shirley, should have filed these returns. By 2007, Jeffrey was signing the company's corporate tax return. It was his responsibility to file these tax returns, too. He would have known that no one else had prepared the returns; he had not asked anyone to prepare them, and no one had given them to him to sign. Vice president Jeffrey, CFO Johnson, and bookkeeper Reed had not seen that the data were organized, the tax returns filed, or the taxes paid.

Before Jeffrey bought the company in August of 2008, Arthur told him about the unpaid taxes and asked him to talk to his mother about them. He instead told Reed and Johnson *not* to tell his mother, and they obeyed. Neither

Jeffrey nor anyone else told Roger and Shirley about the unpaid taxes before the sale of the company.

Jeffrey swore that he knew hardly anything about the company. He pretended that he did not know what the books showed. His testimony was a multifaceted "I don't know" with several accents of "mother did it." He was in charge of operations. He hired an accountant to fix the books, so he realized that they were wrong – or at least that they would not convince Wells Fargo to lend him more than $1 million. The books, the bookkeeper, the CFO, and he were all in the same small building in Channelview. He was planning to buy this company. The accountant even told him about the unfiled tax returns and the unpaid taxes. He did not react with shock to Arthur's report because he knew what had and had not been happening.

Within a week of the closing, Roger and Shirley borrowed an additional $500,000 from the Bank of England account, increasing the debt Jeffrey would have to pay. They returned $200,000. The testimony explained the rest, making it consistent with the contract. The increased debt is not at issue here; it was resolved in a different case in Arkansas. It does not affect who is responsible for unpaid taxes.

On August 13, 2008, the sale of the company closed. Jeffrey bought specified assets and liabilities of the company; Roger and Shirley retained others. With the assets he purchased, Jeffrey formed a new company, Rig-Up Services, Inc. On September 30, 2008, uncomfortable with Jeffrey's refusal to disclose the truth to Roger and Shirley, Arthur wrote to them about the unpaid payroll taxes.

3.   *Fraud.*

Jeffrey's not telling Roger and Shirley about the unpaid taxes induced them reasonably to enter into the sales agreement by fraud.[1]

---

[1] *See Haase v. Glazner*, 62 S.W.3d 795, 797-99 (Tex. 2001); *T.O. Stanley Boot Co., Inc., v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992).

A.    *Omission.*

Jeffrey knew that the company had not paid payroll taxes for 2007 and 2008 before the sale closed. Jeffrey knew about the unpaid taxes no later than July 28, 2008, when he signed a power of attorney to allow Arthur to appear before the IRS. On July 29, 2008, Arthur wrote to Jeffrey to ask him to sign another. In the letter, Arthur mentions unfiled payroll tax returns for the years 2007 and 2008. On August 6, 2008, Arthur told Johnson that he was working on the "payroll tax liability" and mentioned "2008 underdeposits."

Arthur asked Jeffrey to talk to his parents about the unpaid taxes and the unfiled tax returns several times. He did not. In August, Jeffrey told Johnson and Reed not to speak with his parents. The silence was absolute until after the closing on August 13.

Standing mute is a misrepresentation if that person had a duty to speak. A fiduciary has a duty to speak. As vice president, whose role was chief operating officer, Jeffrey owed a fiduciary duty to the company. Also, as a son, his parents trusted him to disclose material facts. His not disclosing what he then knew to be millions in unpaid taxes materially misrepresented the company's condition.

Someone might have a duty to speak if arm's length parties do not have an equal opportunity to discover the material data.[2] Jeffrey insists that he had no duty to disclose the unpaid taxes because Shirley could have discovered them on her own had she asked someone in Texas to send her the books. As a fiduciary, Jeffrey already had a duty to tell her about the unpaid taxes. Besides, the books that Reed had kept showed checks paying the taxes. Had Shirley reviewed them, she would have found those entries obscuring the tax liability.

This was not an arm's length transaction. Here, an insider used facts that no one else knew because he withheld them. Assuming that the money she sent was correctly applied, Shirley did not call to ask whether the company was paying its taxes, but even if she had, no one would have told her.

---

[2]*Holland v. Thompson*, 338 S.W.3d 586 (Tex. App. – El Paso 2010); *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App. – Houston 2007).

B.    *Intent.*

Jeffrey intended that Roger and Shirley act upon his omission. In August, with the sale of the company approaching, he deliberately stayed mute about the unpaid taxes. He instructed Reed and Johnson not to talk to his parents. This shows that Jeffrey intended not to tell Shirley and Roger so that they would go through with the sale at a seriously false valuation.

C.    *Reliance.*

Because no one alerted Shirley to the problem, she did not know about it. Believing the company did not have tax liabilities, she sold its assets to her son, retaining the corporation's tax liability. Obviously and as Shirley testified, they would not have sold it to him had they known about the unpaid payroll taxes.

Roger and Shirley's reliance must have been reasonable. What is reasonable may depend on the relationships among the people. In a company where the executives are only colleagues, it might be unreasonable for the president to rely unquestioningly on what the lower tier of executives says. Here, the president of the company and the next tier are not simply coworkers; they are mother and son. Shirley trusted Jeffrey to take care of the company and to tell her about its problems.

Shirley had trained Reed and trusted her to report truthfully the amounts that the company owed and had collected. Reed and Jeffrey both – with coordination – hid the truth from Shirley.

4.    *Supplements.*

Jeffrey's 173 pages of supplemental exhibits were filed after the close of evidence at the trial. They will be disregarded. After reading them, the court appreciates that they would not help him if allowed. Shirley's supplemental exhibit was not attached to the motion submitted to the court. Even if it had been, it was filed after the trial and would also be disregarded.

5.    *Conclusion.*

Jeffrey controlled the company's operations. The books were in Texas, with him. An accountant, a bookkeeper, and a CFO reported to him. They all knew that the taxes had not been paid. They were supposed to be paying them. Jeffrey, Johnson, and Reed deliberately did not tell Shirley and Roger about the unpaid taxes because they wanted to buy the company at a discount.

Jeffrey C. Bailey and Rig-Up Services, LLC, are responsible for the unpaid payroll taxes as well as all interest and penalties for both taxes and trust funds. Shirley Bailey, Roger Bailey, Bailey Consulting, LLC, and Rig-Up Electrical Services, Inc., are not responsible for either.


Signed on December 13, 2016, at Houston, Texas.


Lynn N. Hughes
United States District Judge